No. 23-10946

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WARD LAWRENCE KENYON,

*Plaintiff-Appellant,*

v.

CITY OF SEBASTIAN; BRAEDEN NEVUE, individually and in his capacity as a City of Sebastian Police Officer; and MELISSA GARRISON, individually and in her capacity as a City of Sebastian Police Officer,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
DOCKET NO. 2:21-CV-14392-AHS

## SUPPLEMENTAL REPLY BRIEF OF PLAINTIFF-APPELLANT
## WARD LAWRENCE KENYON

Abby Wright
Sameer Aggarwal
  *Counsel of Record*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
saggarwal@cov.com

*Counsel for Plaintiff-Appellant*
*Ward Lawrence Kenyon*

December 19, 2025

Case No. 23-10946
*Ward Lawrence Kenyon v. City of Sebastian, et al.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-2(c) and 42-1(a), Plaintiff-Appellant Ward Lawrence Kenyon hereby submits a full list of persons and entities known to Mr. Kenyon to have an interest in the outcome of this case:

1.  Aggarwal, Sameer, associate, Covington & Burling LLP, counsel for Plaintiff-Appellant;

2.  Amigo, Andrea G., former attorney, Roberts, Reynolds, Bedard & Tuzzio, PLLC, counsel for Defendant City of Sebastian;

3.  City of Sebastian, Defendant-Appellee;

4.  Cockcroft, Jennifer, city attorney, Defendant City of Sebastian;

5.  Covington & Burling LLP, counsel for Petitioner;

6.  Garrison, Melissa, Defendant-Appellee;

7.  Jimenez, James R., partner, Roberts, Reynolds, Bedard & Tuzzio, PLLC, counsel for Defendant City of Sebastian;

8.  Kenyon, Ward Lawrence, Plaintiff-Appellant;

Case No. 23-10946

*Ward Lawrence Kenyon v. City of Sebastian, et al.*

9. Nevue, Braeden, Defendant-Appellee;

10. Preferred Governmental Insurance Trust;

11. Reynolds, Lyman H., partner, Roberts, Reynolds, Bedard & Tuzzio, PLLC, counsel for Defendant City of Sebastian;

12. Roberts, George P., partner, Roberts, Reynolds, Bedard & Tuzzio, PLLC, counsel for Defendant City of Sebastian;

13. Roberts, Reynolds, Bedard & Tuzzio, counsel for Defendant-Appellee City of Sebastian;

14. Roper, Townsend & Sutphen, P.A., former counsel for Defendants-Appellees Nevue and Garrison;

15. Scott, Dale A., attorney, Tessitore Mari Scott, PLLC, counsel for Defendants-Appellees Nevue and Garrison;

16. Singhal, Hon. Raag, United States District Judge;

17. Vazquez, Ramon, partner, Roper, Townsend & Sutphen, P.A., counsel for Defendants-Appellees Nevue and Garrison;

18. Wright, Abby, of counsel, Covington & Burling LLP, counsel for Plaintiff-Appellant.

Case No. 23-10946
*Ward Lawrence Kenyon v. City of Sebastian, et al.*

Pursuant to Circuit Rule 26.1-3(b), Counsel further certifies that, to the best of Counsel's knowledge, no publicly traded company or corporation has an interest in the outcome of the case or appeal. Counsel will file an amended certificate of interested persons should he become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-4.

*/s/ Sameer Aggarwal*
Sameer Aggarwal

*Counsel for Plaintiff-Appellant*
*Ward Lawrence Kenyon*

December 19, 2025

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT.......................................................C-1

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND SUMMARY .......................................................1

ARGUMENT ...........................................................................................3

I.    Mr. Kenyon States a Claim for Deliberate Indifference to His
    Serious Medical Needs. ..................................................................3

    A.    The Officers Were Deliberately Indifferent to
        Mr. Kenyon's Severe Injuries...................................................3

        1.    Mr. Kenyon Had an Objectively Serious Medical
            Need..............................................................................4

        2.    The Officers Disregarded the Risk of Serious
            Harm to Mr. Kenyon. ..................................................5

        3.    The Officers' Alleged Conduct Satisfies the
            Requisite Mental State for Deliberate
            Indifference. ...............................................................13

    B.    The Officers Are Not Entitled to Qualified Immunity. ........15

II.    Mr. Kenyon States a Claim for Excessive Force. .........................22

    A.    The Officers Used Excessive Force Against Mr.
        Kenyon.....................................................................................22

    B.    The Officers Are Not Entitled to Qualified Immunity. ........28

III.    Mr. Kenyon States a Claim Against the City................................29

IV.    The District Court Should Reconsider Supplemental
    Jurisdiction....................................................................................31

CONCLUSION ......................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases***

*Adams v. Custer,*
    2016 WL 155081 (S.D. Fla. Jan. 12, 2016) ........................................ 18

*Aldridge v. Montgomery,*
    753 F.2d 970 (11th Cir. 1985) ............................................................ 20

*Allen v. Hays,*
    65 F.4th 736 (5th Cir. 2023) .............................................................. 29

*Ancata v. Prison Health Servs., Inc.,*
    769 F.2d 700 (11th Cir. 1985) .............................................................. 7

*Andre v. Clayton County,*
    148 F.4th 1282 (11th Cir. 2025) ......................................................... 30

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ............................................................................ 13

*Betty Wade v. McDade,*
    106 F.4th 1251 (11th Cir. 2024) (en banc) .................................. 10, 14

*Bozeman v. Orum,*
    422 F.3d 1265 (11th Cir. 2005) (per curiam) .............................. 16, 21

*Brooks v. Miller,*
    78 F.4th 1267 (11th Cir. 2023) ...................................................... 8, 26

*Brown v. Hughes,*
    894 F.2d 1533 (11th Cir. 1990) ..................................................... 19, 21

---

* The authorities on which Mr. Kenyon primarily relies are identified with an asterisk.

*Carswell v. Bay County*,
854 F.2d 454 (11th Cir. 1988) ............................................................ 19

*City of Canton v. Harris*,
489 U.S. 378 (1989) ........................................................................... 30

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................................. 30

*Dang ex rel. Dang v. Sheriff, Seminole Cnty.*,
871 F.3d 1272 (11th Cir. 2017) .......................................................... 14

*Dewberry v. State*,
905 So. 2d 963 (Fla. Ct. App. 2005) ................................................... 24

*Garcia v. Casey*,
75 F.4th 1176 (11th Cir. 2023) ........................................................... 25

*Gilmore v. Ga. Dep't of Corr.*,
144 F.4th 1246 (11th Cir. 2025) (en banc) ........................................ 20

*Harris v. Coweta County*,
21 F.3d 388 (11th Cir. 1994) .............................................................. 19

*Heeter v. Bowers*,
99 F.4th 900 (6th Cir. 2024) ................................................. 11, 12, 22

*Hill v. Dekalb Regional Youth Detention Ctr.*,
40 F.3d 1176 (11th Cir. 1994) ............................................................ 19

*Hoefling v. City of Miami*,
811 F.3d 1271 (11th Cir. 2016) .......................................................... 31

*Holloman ex rel. Holloman v. Harland*,
370 F.3d 1252 (11th Cir. 2004) .......................................................... 20

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................................................... 20

*Hudson v. McMillian*,
503 U.S. 1 (1992) ................................................................................. 5

*Jones v. City of Cincinnati,*
    521 F.3d 555 (6th Cir. 2008).........................................................11, 21

*Kingsley v. Hendrickson*
    576 U.S. 389 (2015)...............................................................................13

*Lancaster v. Monroe County,*
    116 F.3d 1419 (11th Cir. 1997)...........................................................19

*Land v. Sheriff of Jackson Cnty.,*
    85 F.4th 1121 (11th Cir. 2023) ...........................................................26

*Lemire v. Cal. Dep't of Corr. & Rehab.,*
    726 F.3d 1062 (9th Cir. 2013).......................................................11, 22

*Mandel v. Doe,*
    888 F.2d 783 (11th Cir. 1989)..............................................................6, 7

*McElligott v. Foley,*
    182 F.3d 1248 (11th Cir. 1999)............................................................6, 7

*McRaven v. Sanders,*
    577 F.3d 974 (8th Cir. 2009).......................................................11, 22

*Murphy v. Demings,*
    626 F. App'x 836 (11th Cir. 2015)........................................................28

*Nicholas Wade v. Daniels,*
    36 F.4th 1318 (11th Cir. 2022) ..................................................5, 10, 11

*Oliver v. Fiorino*
    586 F.3d 898 (11th Cir. 2009)..............................................................27

*Patel v. Lanier County,*
    969 F.3d 1173 (11th Cir. 2020)......................................................14, 17

*Perez v. Suszczynski,*
    809 F.3d 1213 (11th Cir. 2016)............................................................22

*Prospero v. Sullivan,*
    153 F.4th 1171 (11th Cir. 2025) ..........................................................25

*Salvato v. Blair,*
    2014 WL 1899011 (M.D. Fla. May 12, 2014) ...................................... 18

*Salvato v. Miley*
    790 F.3d 1286 (11th Cir. 2015) ........................................................ 27

*Short v. Hartman,*
    87 F.4th 593 (4th Cir. 2023) ............................................................ 13

*Smith v. U.S. Att'y Gen.,*
    983 F.3d 1206 (11th Cir. 2020) ........................................................ 14

*Stalley v. Cumbie,*
    124 F.4th 1273 (11th Cir. 2024) ........................................................ 3

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ............................................................................ 23

*Thomas v. Town of Davie,*
    847 F.2d 771 (11th Cir. 1988) .......................................................... 19

*United States v. Willis,*
    759 F.2d 1486 (11th Cir. 1985) ........................................................ 25

*United States v. Wilson,*
    979 F.3d 889 (11th Cir. 2020) ............................................................ 3

*Valderrama v. Rosseau,*
    780 F.3d 1108 (11th Cir. 2015) ............................... 9, 10, 12, 16, 17, 21

*Vaughan v. Cox,*
    343 F.3d 1323 (11th Cir. 2003) .................................................... 23, 27

*Vineyard v. County of Murray,*
    990 F.2d 1207 (11th Cir. 1993) ........................................................ 29

*Wate v. Tactuk,*
    2014 WL 5174882 (M.D. Fla. Oct. 14, 2024) .................................... 18

*West v. Keve,*
    571 F.2d 158 (3d Cir. 1978) .............................................................. 7

*Woolfolk v. Gootee*,
      2009 WL 10705815 (M.D. Fla. Jan. 28, 2009) .................................... 18

**Other Authorities**

*Reckless*, Black's Law Dictionary (11th ed. 2019) ................................... 14

## INTRODUCTION AND SUMMARY

After firing sixteen shots at Plaintiff Ward Lawrence Kenyon, Sebastian Police Department officers (the Officers) stood by as Mr. Kenyon lay on the floor of a bar, handcuffed and suffering from life-threatening injuries. The Officers were trained to provide immediate first aid and were also directed to do so by applicable department policies. But for nearly ten minutes before emergency medical services (EMS) personnel arrived, the Officers did nothing. Only after an officer from another police department arrived on the scene did Mr. Kenyon receive the care that stabilized his injuries.

The Officers now contend that they were not deliberately indifferent to Mr. Kenyon's serious medical needs because, in their view, their call to dispatch reporting shots fired and confirming "EMS" fulfills their constitutional obligation to provide medical care. But a radio call is not first aid, and unsurprisingly the Officers' contrary proposition finds no support in this Court's caselaw. Rather, the Court has repeatedly emphasized the importance of every minute in the context of life-threatening injuries, and the Officers' unjustified delay in administering first aid to Mr. Kenyon constitutes deliberate indifference. Mr. Kenyon's

need for immediate medical treatment was obvious to any reasonable officer, and the Officers cannot now escape liability with a proposed bright-line rule that would shield officers who stand idle in life-or-death situations.

The Officers also ask the Court to invert the applicable legal standards to find that they did not use excessive force when they fired sixteen shots at Mr. Kenyon in a crowded bar. Instead of making all inferences in Mr. Kenyon's favor, as the Court must, the Officers request several inferences that directly contradict the allegations in the Amended Complaint, including that one of the officers did not know whether Mr. Kenyon had a firearm when the shooting began. Accepting Mr. Kenyon's allegations as true, Mr. Kenyon has stated a claim under the Fourth Amendment. He has also stated a claim that the City of Sebastian failed to train this officer on the use of deadly force.

The Court should also decline Defendants' invitation to limit the Court's review to the arguments raised in Mr. Kenyon's initial pro se appellate brief. Defs. Supp. Br. 5, 24. When court-appointed counsel submits supplemental briefs following initial pro se briefing, the "counseled briefs are the operative briefs for purposes of th[e] appeal."

*United States v. Wilson*, 979 F.3d 889, 902 (11th Cir. 2020). The Court can thus examine the arguments raised in Mr. Kenyon's supplemental brief—all of which were considered by the district court—without regard for whether a particular argument was raised in the initial appellate brief. And review of those arguments demonstrates that the district court erred, and that this Court should reverse.

## ARGUMENT

**I.    Mr. Kenyon States a Claim for Deliberate Indifference to His Serious Medical Needs.**

### A.    The Officers Were Deliberately Indifferent to Mr. Kenyon's Severe Injuries.

It is undisputed that the Officers allowed Mr. Kenyon, who had been shot multiple times, to lie handcuffed for nearly ten minutes without attempting to administer first-aid or provide medical assistance. The Officers are thus liable for violating Mr. Kenyon's rights under the Fourteenth Amendment: Mr. Kenyon had "an objectively serious medical need," and the Officers (1) "had subjective knowledge of [the] risk of serious harm" to Mr. Kenyon, (2) "disregarded that risk," and (3) "engaged in conduct that amounts to subjective recklessness." *Stalley*

3

*v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citation omitted).[1] The Officers now attempt to justify their failure to assist Mr. Kenyon by arguing that their response was sufficient "because emergency medical services were requested immediately." Defs. Supp. Br. 24. But under this Court's precedent, that is not enough. The Officers' egregious delay in providing first aid to a gunshot victim who was rapidly losing blood was a constitutionally inadequate response, and that delay confirms that the Officers were deliberately indifferent to Mr. Kenyon's serious medical needs.

### 1.    Mr. Kenyon Had an Objectively Serious Medical Need.

The Officers first appear to dispute the objectively serious nature of Mr. Kenyon's medical needs. Defs. Supp. Br. 24. They urge that Mr. Kenyon had a serious medical need "only to the extent that [his medical need] den[ied] [him] the minimal civilized measure of life's necessities," and, in their view, gunshot wounds might not count. *Id.* (citation omitted). That argument is difficult to understand.

---

[1] As explained further below, although Mr. Kenyon has plausibly alleged that the Officers "engaged in conduct that amounts to subjective recklessness," he is not required to do so. Kenyon Supp. Br. 23–24; *infra* at 13–14.

Mr. Kenyon's injuries were gruesome. After the Officers fired sixteen gunshots at him, Mr. Kenyon was "bleeding profusely" from several areas, including his left thigh and right rib cage, and he had severe injuries to his left hand including that some of his fingers had been "blown off." Am. Compl. ¶ 39. He suffered permanent consequences. Mr. Kenyon's injured fingers had to be amputated, a "titanium rod" was installed in his left leg, and he continues to suffer from "extremely painful chronic neuropathy." *Id.* ¶ 46. Even under the Officers' understanding of objectively serious medical needs—which they draw from the conditions-of-confinement context under the Eighth Amendment, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992)—there can be no serious dispute that Mr. Kenyon's life-threatening injuries deprived him of "the minimal civilized measure of life's necessities." *See id.* The Officer's contrary suggestion is also in direct conflict with this Court's common-sense recognition that "a gunshot wound is an objectively serious medical need." *Nicholas Wade v. Daniels*, 36 F.4th 1318, 1326 (11th Cir. 2022).

## 2. The Officers Disregarded the Risk of Serious Harm to Mr. Kenyon.

The Officers also contend that they did not disregard the subjective risks Mr. Kenyon faced because they did not "do nothing" or affirmatively

"delay the provision of the necessary services." Defs. Supp. Br. 24–25. But in so arguing the Officers misinterpret both this Court's caselaw and Mr. Kenyon's allegations.

a. The Officers are incorrect that the mere fact that they did *something*—here, merely calling dispatch to report shots were fired— shields them from any possibility of deliberate indifference. Under this Court's precedent, "a showing of grossly inadequate care" can constitute deliberate difference, as can a state official's "decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In other words, an official's failure to provide an *adequate* response (as happened here) can establish deliberate indifference.

State officials' obligation to provide an adequate response to demonstrated medical need is underscored by the myriad cases in which this Court has permitted deliberate indifference claims to go forward when the defendants offered a response, but an insufficient one. *See, e.g.*, *id.* at 1257–58 (jury could find deliberate indifference when prison officials provided inmate with Tylenol, Pepto-Bismol and Bentyl because treatment was "cursory" in context of condition); *Mandel v. Doe*, 888 F.2d

783, 789 (11th Cir. 1989) (deliberate indifference when prison official "conducted an examination" of inmate's injured leg but failed to take other steps like "apprise[] his supervisor" or "obtain[] an X-ray"); *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (deliberate indifference based on denial of post-operative pain medication because "[a]lthough the plaintiff ha[d] been provided with aspirin, this may not constitute adequate medical care") (cited in *McElligott*, 182 F.3d at 1258; *Mandel*, 888 F.2d at 789; *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). For their part, the Officers do not point to any decisions from this Court to support the idea that *any* response—no matter how deficient—categorically precludes a finding of deliberate indifference.

b. No more successful are the Officers' attempts to distinguish this Court's cases involving the response required when an arrestee has sustained gunshot wounds. The Officers insist that those cases are inapposite because the law enforcement officers "delayed requesting medical assistance." Defs. Supp. Br. 25. On the Officers' telling, they did not delay in this case because they called dispatch to report that shots were fired and dispatch sent EMS personnel. But the Officers err in their myopic focus on the fact of whether an ambulance was called. Nothing in

this Court's precedent supports the Officers' desired bright-line rule that merely calling dispatch and awaiting EMS support satisfies the government's obligation to respond to an arrestee's life-threatening medical needs. Indeed, under the Officers' view, it would not matter whether EMS *ever* arrived and provided medical care; the Officers believe a radio call alone discharged their constitutional duty to provide medical care.

Even cursory scrutiny reveals that any such bright-line rule would eviscerate the constitutional requirement that government officials must "provide medical care to those who've been injured during arrest." *Brooks v. Miller*, 78 F.4th 1267, 1284 (11th Cir. 2023). Consider, for instance, a suspected DUI driver who faces life-threatening injuries following an accident on a rural highway in a location that EMS cannot reach for an extended period of time. Under the Officers' proposed rule, highway patrol who are trained to provide first aid would have no obligation to provide any assistance, so long as an ambulance had been called. The Fourteenth Amendment's requirement that state officials "provide medical care to those who've been injured during arrest," would be an empty promise if highway patrol could stand idle and watch an arrestee

die, all because an ambulance *might* arrive eventually. For that reason, the Sebastian Police Department General Order No. 600c requires that "When Lethal Force has been utilized, the Officer will administer First Aid to the injured *and* call EMS to respond." DE 58 at 21 (emphasis added).

This Court has wisely rejected bright-line rules and embraced a more holistic view of officers' responses, instructing that "even when medical care ultimately is provided, the reason for the officer's delay and the nature of the medical need is relevant" in determining whether the officer was deliberately indifferent. *Valderrama v. Rosseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) (cleaned up).

In *Valderrama*, for example, the officer waited three and a half minutes before they called an ambulance. *Id.* at 1117. But the Court did not measure the officer's delay in simply the time he waited to call an ambulance; rather, it observed that there was in total an eleven-minute delay due to the officer's failure to correctly report the arrestee's injury. *See id.* at 1117–18. Put differently, the Court evaluated the total adequacy of the officer's response. It did not determine that the officer

fulfilled his obligation to provide medical care simply when he called for an ambulance.

The Officers attempt to sidestep *Valderrama* by arguing that the deliberate indifference standard used there was "repudiated" in *Betty Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). Not so. *Betty Wade* was decided in the Eighth Amendment context and is thus not controlling in Fourteenth Amendment cases like this one and *Valderrama*. *See* Kenyon Supp. Br. 23–24; *see also infra* at 13–14. And even if *Betty Wade* directly applied, *Valderrama* remains controlling precedent. Although *Valderrama* applied the then-prevailing "more than gross negligence" standard at the fourth step of its analysis, *see* 780 F.3d at 1120—rather than the "subjective recklessness" standard announced in *Betty Wade*, 106 F.4th at 1262—*Betty Wade* does not impact *Valderrama*'s core findings on whether a serious risk was disregarded, and the Court's conclusion on state of mind is, in any event, consistent with a finding of subjective recklessness. *See Betty Wade*, 106 F.4th at 1265 (Jordan, J., concurring) (if prior cases "are consistent" with *Betty Wade* "then they should continue to be cited as binding precedent").

The Officers also fail to distinguish *Nicholas Wade*, in which the Court considered the full context of the officers' response and held the response was inadequate. The Court observed that "it took *eleven* investigators *four minutes* to call an ambulance when [an officer] had searched, handcuffed, and restrained" the plaintiff and one officer "press[ed] on [the plaintiff's] gunshot wounds." 36 F.4th at 1327. Recognizing that "applying a Band-Aid would neither justify nor explain a delay in seeking medical attention for a stab wound," the Court determined that a reasonable jury could find deliberate indifference given the inadequate response of the investigators. *Id.*

Nor do the Officers even attempt to respond to the many additional cases Mr. Kenyon cited in which other courts of appeals have held that state officials were deliberately indifferent to the plaintiff's medical needs—even after calling EMS services—because they failed to administer immediate treatment in situations that call for it. *See, e.g.*, *Heeter v. Bowers*, 99 F.4th 900, 917 (6th Cir. 2024); *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1083 (9th Cir. 2013); *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008). Under this well-established precedent, "an

officer's obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance." *Heeter*, 99 F.4th at 919 (cleaned up). Like the officers in those cases, the Officers "had an obligation to provide Mr. [Kenyon] with immediately necessary medical care," and their "decision to instead stand idle violated the Constitution." *Id.* at 921.

      c. Applying the correct legal principles to this context—and not the flawed constitutional escape hatch the Officers propose—the Officers' response was grossly inadequate. Kenyon Supp. Br. 18–20. Mr. Kenyon sustained severe injuries from several gunshot wounds, and he indisputably needed immediate first aid. Although Officer Garrison called for EMS services after shots were fired, the Officers then allowed Mr. Kenyon to lie bleeding for nearly ten minutes before an officer from another department showed up and administered the care that Mr. Kenyon desperately needed. The other officer's prompt response not only "saved [Mr.] Kenyon's life," Am. Compl. ¶ 40, but also further highlights that reasonable officers understood the gravity of the situation and that immediate medical care was necessary in this life-or-death situation. *See Valderrama*, 780 F.3d at 1121 (officer testified that he would "not let a

12

shooting victim sit there for ten minutes" and he "would have just thrown him in [his] car and driven to the hospital" (alteration adopted)).

### 3. The Officers' Alleged Conduct Satisfies the Requisite Mental State for Deliberate Indifference.

The Officers further contend that their response did "not amount to a subjective recklessness of a criminal nature." Defs. Supp. Br. 26. As an initial matter, as demonstrated in his supplemental brief, Mr. Kenyon is not required to satisfy the recklessness threshold because his claims arise under the Fourteenth Amendment, not the Eighth Amendment. Kenyon Supp. Br. 23–24. In *Kingsley v. Hendrickson*, the Supreme Court explained that the Due Process Clause protects pretrial detainees from "governmental action" that "is not rationally related to a legitimate nonpunitive governmental objective" or that "is excessive in relation to that purpose," and that the test is "solely an objective one." 576 U.S. 389, 397–98 (2015); *see also Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (assessing whether restrictions on pretrial detainees were "reasonable responses" to security concerns). For this reason, several courts have held "it is impossible to reconcile *Kingsley* with" their previous "subjective deliberate indifference test for Fourteenth Amendment claims." *Short v.*

*Hartman*, 87 F.4th 593, 608–10 (4th Cir. 2023); *see also* Kenyon Supp. Br. 24 (citing cases).

The Officers respond by referencing only this Court's footnote addressing *Kingsley* in *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017). Defs. Supp. Br. 14. But after the en banc decision in *Betty Wade*, which emphasized the importance of the Eighth Amendment's language and history, *see* 106 F.4th at 1259, this Court can revisit its drive-by analysis in *Dang* to determine if it remains appropriate to apply the same standards to deliberate indifference claims in the contexts of the Eighth and Fourteenth Amendments.

In any event, the Court can allow Mr. Kenyon's case to proceed without resolving this question because the Officers' alleged conduct amounts to recklessness. This Court has explained that recklessness constitutes "a gross deviation from what a reasonable person would do." *Smith v. U.S. Att'y Gen.*, 983 F.3d 1206, 1212 (11th Cir. 2020) (quoting *Reckless*, Black's Law Dictionary (11th ed. 2019)). And in this context, the appropriate question is how a reasonable officer would respond to Mr. Kenyon's injuries. *Patel v. Lanier County*, 969 F.3d 1173, 1190 (11th

14

Cir. 2020) (considering context in which officer "wasn't an ordinary layperson—he was trained as a medical first responder").

At this early stage, Mr. Kenyon has offered ample allegations and authority that would permit a jury to ultimately determine that the Officers grossly deviated from what a reasonable officer would do when they allowed him to lie bleeding for nearly ten minutes. He has alleged, for example, that Officer Nevue "understood the need for tourniquets and things like that." Am. Compl. ¶ 97. And a jury would not need to imagine what a hypothetical reasonable officer would do: an officer from another department *did* administer first aid to stop Mr. Kenyon's bleeding as soon as he arrived on the scene. *Id.* ¶ 40. The Sebastian Police Department's own policy also required the Officers to "administer First Aid to the injured and call EMS to respond" in cases like this where lethal force was used. DE 58 at 21. Mr. Kenyon has thus sufficiently alleged that the Officers were deliberately indifferent to his serious medical needs, even assuming subjective recklessness is required.

## B.    The Officers Are Not Entitled to Qualified Immunity.

The Court should also reject the Officers' arguments that they are entitled to qualified immunity. They contend that they should be shielded

15

because the need to "personally provide" Mr. Kenyon with "medical assistance" was not clearly established. Defs. Supp. Br. 28. That is mistaken.

*First*, the Officers again fail in their attempt to distinguish *Valderrama*. They continue to insist that their initial decision to call an ambulance is sufficient to move this case outside of *Valderrama*'s ambit. But, as explained, the Court's decision was not so limited. It announced several guiding principles of particular salience here as that case also involved an arrestee's life-threatening gunshot wounds. For instance, the Court made clear that in these circumstances "delays even of only a 'few minutes' in seeking care for life-threatening injuries can constitute deliberate indifference." 780 F.3d at 1122 (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (per curiam)). And the Court highlighted testimony from an officer who explained that "it is improper to allow a shooting victim to wait longer than ten minutes for an ambulance." *Id.* at 1121.

From these principles, the *Valderrama* Court concluded that the officers were not entitled to qualified immunity because: (1) "there [was] evidence that Mr. Valderrama's injuries were life threatening," (2) the

16

officers "subjectively knew that he needed medical treatment," and (3) the eleven-minute delay there was "two to five times longer" than the delay in a case cited by the defendants. *Id.* Those factors map on nearly identically to this case. Mr. Kenyon's injuries were life threatening, he has plausibly alleged that the Officers subjectively knew of his need for immediate treatment, and the Officers stood idle for nearly ten minutes while Mr. Kenyon suffered from his injuries. The Officers cannot now contend that they lacked notice that their meager response did not violate the Constitution. *See Patel*, 969 F.3d at 1191 n.11 (it is "unlikely that an officer will be able to avail himself of qualified immunity where … the evidence allows an inference that he was aware of and flatly ignored a serious risk of harm requiring medical attention just because our prior case law didn't put him on notice of that risk" (emphasis omitted)).

*Second*, the Officers point to several district court cases (many of which pre-date *Valderrama*) to support their contention that their duty to assist Mr. Kenyon was satisfied when "medical help is summoned" and that they had "no affirmative duty" to "render CPR in any and all circumstances." Defs. Supp. Br. 26–27 (collecting cases). But those non-binding cases are not informative here as they have key factual

17

distinctions—including that the arrestee received some type of immediate treatment—and otherwise fail to apply the clearly established principles in this court about delays of medical treatment in life threatening circumstances. *See Woolfolk v. Gootee*, 2009 WL 10705815, at *8 (M.D. Fla. Jan. 28, 2009) (officer "about to start a chest compression when the Fire Department arrived"); *Adams v. Custer*, 2016 WL 155081, at *3 (S.D. Fla. Jan. 12, 2016) ("[w]ithin minutes" another officer "appl[ied] pressure to [arrestee's] wounds until the medics arrived"); *Wate v. Tactuk*, 2014 WL 5174882, at *8 (M.D. Fla. Oct. 14, 2024) (dismissing claim because plaintiff failed to allege officer had "sufficiently culpable state of mind" for subjective component of deliberate indifference); *Salvato v. Blair*, 2014 WL 1899011, at *12 (M.D. Fla. May 12, 2014) (plaintiff's expert "did not identify any medical care that [defendants] could have provided").

The Officers also once again attack a strawman in suggesting that accepting Mr. Kenyon's claim yields a duty to "render CPR in any and all circumstances." Defs. Supp. Br. 26. Mr. Kenyon faced life-threatening injuries from several gunshot wounds and did not present any risk to the Officers or anyone else while he was handcuffed and bleeding. That is not

18

"any and all circumstances." The law in this Circuit is clearly established that the context of injuries affects the response that is required. *See, e.g.*, *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) ("Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."); *Lancaster v. Monroe County*, 116 F.3d 1419, 1427 (11th Cir. 1997) (defendants were "warned" that inmate "had previously experienced seizures from alcohol withdrawal" but "allowed [him] to remain on the top bunk in his precarious state"); *Harris v. Coweta County*, 21 F.3d 388, 393–94 (11th Cir. 1994) (officer "delay[ed] prescribed treatment for a serious medical need for several weeks"); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (officer delayed medical care for inmate's broken foot for six hours); *Carswell v. Bay County*, 854 F.2d 454, 455, 457 (11th Cir. 1988) (official recognized that inmate later diagnosed as diabetic "was emaciated and needed medical attention" but "ignored the warnings"); *Thomas v. Town of Davie,* 847 F.2d 771, 772 (11th Cir. 1988) (officers

knew of plaintiff's "medically emergent and deteriorating condition" but ignored signs, and he later "collapsed and was injured" (cleaned up)); *Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11th Cir. 1985) (officers "ignor[ed] bleeding cut" that later "required six stitches").

Repeating their errors, the Officers appear to contend that Mr. Kenyon is required to identify a case in which the defendants were required to "personally perform medical assistance on the arrestee." Defs. Supp. Br. 29. But the law does not require that there "be a case 'on all fours,' with materially identical facts, before [the Court] will allow suits against" public officials. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004) (citation omitted). Instead, the relevant standard is whether the "general constitutional rule … appl[ies] with obvious clarity to the specific conduct in question." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). And here, there are several indicia demonstrating that the need for medical assistance should have been obvious to the Officers.

*First*, this Court's caselaw clearly establishes that "delays even of only a 'few minutes' in seeking care for life-threatening injuries can

constitute deliberate indifference." *Valderrama*, 780 F.3d at 1122. In

*Valderrama*, the court relied on testimony from an officer who said he

would "not let a shooting victim sit there for ten minutes," and "would

have just thrown him in [the] car and driven to the hospital." *Id.* at 1121;

*supra* at 9–10, 16–17. Similarly, in *Bozeman*, the officers "knew [the

inmate] was unconscious and not breathing" for fourteen minutes and

failed to "check [his] breathing or pulse," "administer CPR," or "summon

medical help." 422 F.3d at 1274; *see also Brown*, 894 F.2d at 1538 ("an

unexplained delay of hours in treating a serious injury" like a broken foot

"states a prima facie case of deliberate indifference").

*Second*, an officer from another department who arrived on the

scene immediately recognized the severity of the situation and began

administering first aid by using Mr. Kenyon's belt as a tourniquet. Am.

Compl. ¶ 40.

*Third*, precedent from other circuits instructs that officers must

provide an adequate response and cannot, for example, simply leave a

handcuffed arrestee "on the ground for a prolonged time" and "fail[] to

provide aid" when they "knew [he] was not breathing." *Jones*, 521 F.3d at

560; *see also McRaven*, 577 F.3d at 983; *Lemire*, 726 F.3d at 1083; *Heeter*, 99 F.4th at 920–21.

*Fourth*, the Officers should have been aware of Sebastian Police Department General Order No. 600c, which instructs that "When Lethal Force has been utilized, the Officer will administer First Aid to the injured and call EMS to respond." DE 58 at 21.

Mr. Kenyon's need for immediate assistance was therefore of "obvious clarity" to all reasonable officers, and the Officers are not entitled to qualified immunity.

## II.   Mr. Kenyon States a Claim for Excessive Force.

### A.   The Officers Used Excessive Force Against Mr. Kenyon.

The Officers do not seriously attempt to defend the reasoning the district court used to reject Mr. Kenyon's excessive force claim. The district court found Mr. Kenyon's possession of a firearm to be dispositive, Order at 9–10, despite binding precedent instructing that "the mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit." *Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016). As the Officers implicitly concede, the district court's judgment cannot be sustained as it stands.

The Officers urge this Court instead to make several inferences in their favor to defend their use of lethal force against Mr. Kenyon. But when viewing the Amended Complaint in the light most favorable to Mr. Kenyon, as this Court must, the Officers' use of deadly force here was not reasonable.

The use of deadly force is appropriate only when an officer "'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm.'" *Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)). The Officers' arguments here do not help them establish that the incident at the bar falls into either of these buckets. There is no indication from the Amended Complaint or the Officers' briefs that Mr. Kenyon's probation violation constitutes or stems from "a crime involving the infliction or threatened infliction of serious physical harm." And given the allegation that Officer Nevue did not see Mr. Kenyon's firearm, he also lacked probable cause to believe that Mr. Kenyon "pose[d] a threat of serious physical harm" to the Officers or others.

23

According to the Officers, the Amended Complaint "clearly alleges" that the Officers "went to [the bar] to arrest Mr. Kenyon pursuant to a warrant for violation of his probation," and that they were "acting to secure" him. Defs. Supp. Br. 17. But even if that were true, it does not follow that arresting an individual for a mere probation violation would justify the use of lethal force—especially in a situation like this where the Amended Complaint alleges that Officer Nevue "could not see" Mr. Kenyon's firearm and "did not have knowledge" that Mr. Kenyon had a firearm. Am. Compl. ¶ 30. The Officers do not explain how their escalation to lethal force was warranted, given that Mr. Kenyon "never made any aggressive movements with [his] weapon whatsoever." *Id.*

To justify their use of force, the Officers attempt to impute knowledge to Officer Nevue by invoking the "collective knowledge doctrine." Defs. Supp. Br. 17 (citing *Dewberry v. State*, 905 So. 2d 963, 967 (Fla. Ct. App. 2005)). Because Officer Singh saw Mr. Kenyon's firearm, the argument goes, Officer Nevue may also now say that he was aware of it. But that argument fails in this context where each officer's actions can only be justified by their own observations in the field.

The collective-knowledge doctrine allows the Court "to 'aggregate the officers' knowledge at any given moment' to determine if they had probable cause for an arrest," and it applies "so long as the officers 'maintained at least a minimum level of communication with each other *during their investigation.*'" *Prospero v. Sullivan*, 153 F.4th 1171, 1181 n.7 (11th Cir. 2025) (quoting *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985)) (alteration adopted) (emphasis added). This rule makes sense in the context of an investigation because different officers may carry out different tasks within the investigation and ultimately put their knowledge together to determine whether there is probable cause for an arrest. That is why the Court has "[t]ypically … only applied this collective-knowledge doctrine among the investigating and arresting police officers," and has recently also included "911 dispatchers." *Id.* at 1185; *see also Garcia v. Casey*, 75 F.4th 1176, 1189 (11th Cir. 2023) (aggregating knowledge in officers' "investigation file").

It does not make sense to extend that doctrine to an excessive force claim stemming from an incident in the field where one officer saw a firearm, but another officer did not. Excessive force claims are based on the events of a particular incident and are analyzed from "the perspective

of a reasonable officer on the scene." *Brooks*, 78 F.4th at 1282 (cleaned up). In contrast, the probable cause inquiry can be more deliberate and unfolds over time, as courts consider "the totality of the circumstances," and ask whether "a reasonable officer could conclude that there was a substantial chance of criminal activity." *Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1126–27 (11th Cir. 2023).

The situation in this case underscores the distinction. Officer Singh and Officer Nevue did not deliberate and share their collective knowledge to determine whether there was "probable cause." Instead, the Court's analysis must center on the perspective of a reasonable officer in Officer Nevue's position, while also crediting Mr. Kenyon's allegation that it was "impossible" for Officer Nevue to have "any knowledge that [Mr.] Kenyon had a weapon in his hand or posed any immediate threat of serious physical harm" at the time Officer Nevue fired his weapon. Am. Compl. ¶ 31. That is especially true because Officer Singh did not respond with force after he "spotted" the firearm. *Id.* ¶ 30. Instead, he "grabbed [Mr.] Kenyon's hands" and "ended up on top of [Mr.] Kenyon's back." *Id.* Officer Nevue cannot now attempt to contradict these allegations by

invoking the "collective knowledge doctrine" to justify his use of deadly force.

The Officers also fail to advance their cause by arguing that the cases upon which Mr. Kenyon relies "almost exclusively" involved "the use of deadly force against suspects who were secured or complying with the commands of the officer." Defs. Supp. Br. 16. That purported distinction finds no support in those cases. For instance, in *Vaughan*, the Court held that a jury could find an officer's use of deadly force was unreasonable when an officer "simply faced two suspects who were evading arrest" and accelerated in their truck "in an attempt to avoid capture." 343 F.3d at 1330. In *Oliver v. Fiorino*, the Court confronted a situation in which an arrestee "struggled to free himself from [an officer] in the street," but it nonetheless held that an officer used excessive force when she tased the arrestee several times. 586 F.3d 898, 906 (11th Cir. 2009). And in *Salvato v. Miley*, the Court held the officer used excessive force when she shot a suspect, even though the suspect "resisted arrest" and "struck the officers multiple[] times." 790 F.3d 1286, 1293–94 (11th Cir. 2015). In other words, even when a suspect is thought to be actively "struggl[ing]" with an officer or attempting to "evad[e]" or "resist[]"

27

arrest—an inference that is not supported by the Amended Complaint here at this early stage—officers cannot use deadly force unless they face a threat of serious physical harm.

### B.    The Officers Are Not Entitled to Qualified Immunity.

The Officers also cannot rely on qualified immunity to paper over their unreasonable use of force. After recapping the general principles regarding qualified immunity, the Officers' only substantive argument on qualified immunity is an attempt to compare this case to the Court's unpublished decision in *Murphy v. Demings*, 626 F. App'x 836 (11th Cir. 2015). *See* Defs. Supp. Br. 22. But their analogy falls flat.

In *Murphy*, the officers chased "a suspect in an *armed* robbery that had occurred less than two hours before" and had "initiated a high-speed chase" in his "attempt to evade capture," which included "*hitting two police cars*" and "driving at a high speed, without his headlights on, on a road with at least one other civilian car nearby." *Id.* at 840 (emphasis in original). In those circumstances, an officer "could have reasonably believed" that the suspect "posed an imminent threat of serious physical injury to the officers and to others." *Id.* But it does not follow that the Officers acted reasonably here when, according to the allegations, Officer

Nevue began firing shots before he even saw Mr. Kenyon's firearm and the Officers continued firing at Mr. Kenyon even after he was underneath the pool table, without providing a warning before initiating the second set of shots. Kenyon Supp. Br. 37–45; *see also Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) ("[A]n officer cannot escape liability any time he claims he saw a gun.").

## III.    Mr. Kenyon States a Claim Against the City.

To avoid liability for its failure to train Officer Nevue, the City urges that Mr. Kenyon did not "identify or infer the existence of any other incidents" that would yield "a pattern of using deadly force." Defs. Supp. Br. 8. The City also believes the training it provided was sufficient, arguing that the Amended Complaint "alleges Officer Nevue was qualified in the standard use of firearms." *Id.* at 7–8. Neither argument passes muster.

The City errs in its argument that the lack of an alleged "pattern" defeats liability under *Monell. See id.* at 10–11. As this Court has explained, "a single constitutional violation may result in municipal liability when there is sufficient independent proof that the moving force of the violation was a municipal policy or custom." *Vineyard v. County of*

*Murray*, 990 F.2d 1207, 1212 (11th Cir. 1993) (cleaned up); *see* Kenyon Supp. Br. 49–50. That reasoning accords with the Supreme Court's observation that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64 (2011). And "the use of deadly force" is one such circumstance that is "'so obvious,' that failure to" train officers in this respect "could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (citation omitted).

Here, Mr. Kenyon's complaint states allegations supporting a reasonable inference that the City was the "moving force" behind Mr. Kenyon's constitutional claims because it permitted Officer Nevue to work in the field without "any documents or records showing that he was provided any training in the proper use of firearms," aside from one instance in which he learned how to "shoot faster." Am. Compl. ¶ 58. Those types of allegations are sufficient at this stage where Mr. Kenyon is only required to plausibly demonstrate that the City's policies caused a violation of his constitutional rights. *See Andre v. Clayton County*, 148

F.4th 1282, 1300 (11th Cir. 2025) (county's drug interdiction program plausibly violated airline passengers' constitutional rights); *Hoefling v. City of Miami*, 811 F.3d 1271, 1280–81 (11th Cir. 2016) (plaintiff plausibly alleged that city was responsible for seizure and destruction of his sailboat).

The City further attempts to defend its actions by framing the dispute more broadly, asserting that its "officers received training on the use of deadly force." Defs. Supp. Br. 11. But the City stops short of asserting that *Officer Nevue* received such training. And allowing Officer Nevue to carry a firearm and work in the field without this training could reasonably constitute deliberate indifference to the risk that Officer Nevue would use excessive force. Indeed, if the City had properly trained Officer Nevue on the use of deadly force, he may have understood that he should not have fired at Mr. Kenyon before he could even see Mr. Kenyon's firearm. Kenyon Supp. Br. 50–51.

## IV.  The District Court Should Reconsider Supplemental Jurisdiction.

Defendants do not dispute that, if this Court reverses the district court's judgment and revives any of Mr. Kenyon's claims, it would also be appropriate for the district court to reconsider whether to exercise

31

supplemental jurisdiction over Mr. Kenyon's state law claims. Defs. Supp. Br. 29–30. The parties thus appear to agree that the question of whether the district court should preside over the state claims rises and falls with the question of whether Mr. Kenyon has stated a federal claim.

## CONCLUSION

The Court should reverse the district court's order granting Defendants' motions to dismiss and remand for further proceedings.

Respectfully Submitted,

/s/ Sameer Aggarwal
Abby Wright
Sameer Aggarwal
  *Counsel of Record*
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-5434
saggarwal@cov.com

*Counsel for Plaintiff-Appellant*
*Ward Lawrence Kenyon*

December 19, 2025

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WARD LAWRENCE KENYON,

        *Plaintiff-Appellant,*

    v.                         No. 23-10946

CITY OF SEBASTIAN, BRAEDEN
NEVUE, and MELISSA GARRISON,

        *Defendants-Appellees.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), the brief contains 6,325 words. I further certify that the brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Century Schoolbook font.

33

*/s/ Sameer Aggarwal*
Sameer Aggarwal

*Counsel for Plaintiff-Appellant*
*Ward Lawrence Kenyon*

December 19, 2025